## KLUG v. WASHINGTON RY. & ELECTRIC CO.

### No. 5517.

Court of Appeals of the District of Columbia.
Argued May 31 and June 1, 1932.
Decided June 27, 1932.

Rehearing Denied Oct. 8, 1932.

Harlan Wood and James P. Donovan, both of Washington, D. C., for appellant.

P. H. Marshall, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by plaintiff below from a judgment on a verdict for defendant returned by direction of the court.

The action was for damages for personal injuries sustained by plaintiff in falling, or being thrown, from one of defendant's street cars while as a passenger she was alighting therefrom.

About 9 a. m. on December 16, 1927, the plaintiff, a laboring woman about 58 years of age, boarded one of defendant's cars, eastbound on F street, at Ninth street N. W., in Washington city, to ride to Seventh and East Capitol streets.

When she arrived at that point, and was either in the act of alighting or had just done so, depending on whose version of the occurrence is believed, she was either thrown to the street by some negligence of defendant's servants in operating the car, or the movable steps thereof, or she fell because of something for which the defendant was not responsible.

The trial court did not determine that question, and it requires no discussion here.

As a result of the occurrence, however, she was taken to Providence Hospital, where she remained for some ten weeks, or until February 25th, under treatment for a fractured dislocation of the ankle, traumatic shock which might or might not be permanent, and some arthritis which her doctor testified would be more or less permanent and very painful.

Three pleas were filed to the declaration, the third being that the plaintiff had executed a release of the defendant company, and, as that plea was the ground on which the trial court directed the verdict, we can confine ourselves to its consideration and the action of the trial court thereon, which is the foundation of the six specific assignments of error in the record.

While the appellant's brief shows much industry in collecting cases, we consider this appeal as depending upon the application of settled law to the particular facts disclosed in the proceedings.

The record shows that to the plea of release a replication was filed alleging mistake as to the legal effect of the paper signed by the plaintiff, and fraud in its preparation and procurement. This replication was followed by a rejoinder denying the allegation of fraud, after which issue was joined.

The other pleas having raised questions of negligence, the issues before the trial court were the alleged negligence and the legal effect of the alleged release.

The plaintiff was the first witness, and on direct examination she testified as to the circumstances preceding her injury, her treatment and her sufferings, and her condition thereafter.

On cross-examination she testified further about those matters; identified her signature to the release, and her indorsement of the $250 check which was the consideration therefor, both of which papers were marked at that time for identification.

With nothing further touching the release, she left the stand to appear no more until she was offered in rebuttal.

She was followed by the gentleman who took her to the hospital in his motorcar, and by her doctor, neither of whom testified regarding the release, whereupon her counsel closed her case.

A motion for a directed verdict was thereupon made and denied, whereupon, for the defense, an official of the defendant company testified in regard to a visit made to him by the plaintiff shortly before the suit was brought at which she requested employment.

This witness was followed by another official of the company, who, after some testimony touching the above interview, further testified about the alleged release. In substance, this witness said that about the middle of January, 1928, a lady called to see him at his office, introducing herself as Mrs. Lehner, a daughter of the plaintiff. Over objection and exception he testified that she told him she called on behalf of her mother, though she does not appear ever to have stated that her mother sent her, or authorized her visit. She told him of her mother's continued confinement in the hospital, to which he replied that he thought it was not a case he could do anything about. The daughter made a second visit to the defendant's offices about a week later, and, after a similar conversation touching her mother's condition, said she would like the company to help her by way of expenses.

So stated, it is not clear whether the daughter was to be helped with expenses or the plaintiff, though it is clear that the expenses discussed were the mother's expenses. The official of the company still insisted that it was not a case for any substantial settlement, and says that during the second conversation with the daughter, at her suggestion, he agreed to pay her $250. He explained to her what was necessary to be done with respect to the details of the settlement, which he said appeared to be satisfactory to her. He gave her the form of release, which she returned some three days later executed by her mother in the presence of a notary and witnessed by the daughter and her husband, whereupon the daughter was given a check for $250, which check was offered in evidence, was indorsed by the plaintiff, and the last indorsement on which is "for deposit only to credit of Providence Hospital."

All of this testimony regarding the interviews between the daughter and the defendant was objected to as hearsay by the plaintiff, but admitted by the court upon the suggestion of counsel that, "if we do not follow it up, your honor will strike it all out; I realize that." But it was not followed up by any testimony from the daughter or any one else, unless we consider as such the testimony of the officers of the company that, when the plaintiff applied for employment, she was satisfied with the release, which she denied.

This testimony was intended to show that the daughter was the agent of the plaintiff in the negotiations, and to disprove the allegation of fraud in connection with the release. If not incompetent for these purposes, it was highly unconvincing, for nowhere did anyone say that the daughter at any time asserted that her mother had sent her to the company, or authorized her visits, while the mother in the short rebuttal permitted to her said she did not send the daughter.

We thus have a case where an ignorant charwoman, able to read and write but little, whose education had extended through three grades of the public schools, but half through her tenancy of a hospital bed, propped up on pillows and signing for $250 a release presented to her by a daughter who obtained it from the company without any representation of authority so to do other than the fact of her relationship and her apparent solicitude for her mother. The injured woman raised the issue that she believed the paper she signed to be a receipt for money advanced by the company on account of accruing hospital expenses; that it was so represented to her at the time she signed it; yet she was denied the opportunity to so testify in rebuttal of testimony received from the defendant regarding the alleged release. At and before the time of the trial the daughter and her husband were in Texas, as the record shows, and their depositions were not taken by either side.

The officers of the company detailed their negotiations with the daughter in its defense, but, when plaintiff's counsel offered in rebuttal to have her testify for the first time as to her side of the alleged release, and the issue raised thereon, the trial court declined to hear her, saying: "There is contradictory evidence about this matter which the jury has to settle but that does not open the doors to going over again that which has already been testified to. She has given her version about it, and the defendants have given their version, and it is for the jury to say which is true."

But at that time the only evidence touching the release, except its identification by the plaintiff, had been given by the defendant's witnesses, and, if that constituted contradictory testimony for the jury, the case could not be properly taken from the jury by the court.

We, of course, intimate no opinion touching the merits of the alleged negligence or the alleged release, but we regard the withdrawal of the case from the jury in the posture in which it stood as erroneous, and the judgment is therefore reversed and the cause remanded for a new trial.

Reversed.